UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BRUCE A. SMILEY, | ) |
|     Plaintiff, | ) |
| v. | )    No. 1:21-CV-88-TAV-CHS |
| CENTURION HEALTHCARE SYSTEMS, | ) |
| TONY PARKER, M.D., | ) |
| KENNETH WILLIAMS, | ) |
| KATHERINE CAMPBELL, | ) |
| JOHN/JANE DOE, and | ) |
| DR. MEYDRECH, | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

The Court is in receipt of a prisoner's pro se complaint for violation of 42 U.S.C. § 1983 in which Plaintiff asserts that Defendants have violated his constitutional rights by denying him vision and dental care and subjecting all prisoners to a fourteen-day quarantine after medical visits outside of the prison [Doc. 1].[1] For the reasons set forth below, this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983.

I.    **SCREENING STANDARD**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous

---

[1] The United States District Court for the Middle District of Tennessee transferred this action to this Court after assessing Plaintiff with the filing fee [Doc. 6].

or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

## II. PLAINTIFF'S ALLEGATIONS

The Tennessee Department of Correction ("TDOC") has a policy providing that inmates shall have access to health care services through sick calls "as required"

2

[Doc. 1 p. 6]. Also, the Bledsoe County Correctional Complex ("BCCX") has a policy providing that inmates "shall have timely access to routine, chronic, and emergency health care and behavioral health services" [*Id.*].

However, on April 28, 2020, soon after the COVID 19 pandemic had begun, Defendant Health Services Administrator ("HSA") Campbell posted a memorandum stating that, despite the national health emergency, healthcare was still available to TDOC inmates, and that they should continue to submit sick call requests that would be triaged [Doc. 1-1 p. 27]. This memorandum specifically notified inmates that medical providers would not see them in the clinic for "minor complaints or concerns that are not urgent," and that inmates would "have the opportunity to address these concerns once the national health emergency has resolved" and could "address these complaints at [their] next chronic care visit with the provider" [*Id.*].

According to Plaintiff, he should be assessed yearly by a vision care specialist due to his age and chronic care issues [Doc. 1 p. 7]. However, Plaintiff's last evaluation with a vision care specialist was in 2017, at which time he received bifocal eyeglasses [*Id.*]. In the last quarter of 2019, Plaintiff told a chronic care provider that his bifocal prescription was outdated, and that he wanted to see the eye doctor [*Id.* at 7–8]. Plaintiff saw the chronic care provider write a referral for him and enter it into his chart [*Id.* at 8]. Then, on March 5, 2020, Plaintiff's eyeglasses became broken beyond repair, and he therefore put in a request stating that his glasses had broken and inquiring about his referral to an eye doctor [*Id.*; Doc. 1-1 p. 40]. In response, Nurse Phyllis Sutton stated that Plaintiff did not

3

have a referral for an eye doctor and would need to sign up on sick call to see an eye doctor [Doc. 1 p. 8; Doc. 1-1 p. 40].  On March 20, 2020, Plaintiff paid a three-dollar copay and saw the nurse [Doc. 1 p. 8; Doc. 1-1 p. 42].  Plaintiff received a referral for an eye doctor evaluation at this nurse visit [Doc. 1 p. 8].  However, Plaintiff still has not seen the eye doctor, and his vision has deteriorated to the point that he is only able to read for a few minutes before he gets headaches [*Id.*].  Plaintiff seeks to hold Defendant Centurion Health Care System liable for this denial of vision care services, which he alleges violates his rights under the Eighth and Fourteenth Amendments [*Id.* at 9, 13].

In June 2018, Plaintiff began experiencing issues with his dentures [*Id.*].  Between April 2019 and March of 2020, Plaintiff experienced cracks in his lower partial denture that Defendant Dr. Meydrech repaired [*Id.*].  Plaintiff last saw Defendant Dr. Meydrech on July 11, 2019, at which point this Defendant told him that if he experienced further issues, he should forward Defendant Dr. Meydrech an inmate information request form so that he could "forego the sick call process" [*Id.* at 9–10].  On March 30, 2020, Plaintiff sent Defendant Dr. Meydrech an information request form stating that he had two chips in his lower partial denture [*Id.* at 10].  However, Defendant Doe responded to this request on April 7, 2020 by stating "We have limited seeing [patients] at this time.  When we start seeing [patients] again, you will need to put in a sick call" [*Id.*; Doc 1-1 p. 60].  But Plaintiff's lower partial denture has now deteriorated to the extent that an area on each side is completely missing [Doc. 1 p. 10].  Plaintiff thus asserts that the denial of routine dental services to him has caused him to go without his lower partial denture or endure pain from

4

wearing his broken lower partial denture, which causes him pain and frustration in chewing and fear of choking due to the poor fit [*Id.* at 10–11]. Plaintiff seeks to hold Defendant Centurion Health Care System, Defendant Doe, Defendant Meydrech, and Defendant TDOC liable for this denial of dental care, which he alleges violates his rights under the Eighth and Fourteenth Amendments [*Id.* at 11, 14–15].

Also, according to Plaintiff, BCCX prisoners must quarantine in a segregated housing unit for fourteen days after doctor visits [*Id.* at 11, 16]. However, the TDOC employees that transport and accompany prisoners to appointments do not have to quarantine afterwards, despite being subjected to the same environmental conditions [*Id.* at 11–12, 16]. Plaintiff alleges that this quarantine policy violates his rights under the Eighth and Fourteenth Amendments [*Id.* at 12].

Plaintiff has sued Defendant Centurion Health Care System, TDOC Commissioner Tony Parker in his official capacity, TDOC Medical Director Kenneth Williams in his individual and official capacities, BCCX HSA Katherine Campbell in her official and individual capacities, "Utilization Management Entity" Jane or John Doe in his or her official and individual capacities, and BCCX "Dental Authority" Dr. Meydrech in his official and individual capacities [*Id.* at 3–4]. As relief, Plaintiff seeks compensatory damages, including for TDOC to pay for him to receive medical care for the issues addressed in the complaint if he has to pay for that medical care after his release, "all available relief under the law necessary to make Plaintiff whole," declaratory relief,

5

injunctive relief, and attorney fees, expenses and cost, and "all other relief, legal or equitable, that this Court deems just and proper" for each of his claims [*Id.* at 12–18].

## III. ANALYSIS

### A. Denial of Vision and Dental Care

As set forth above, Plaintiff first alleges that he has not received vision and dental care in violation of his rights under the Eighth Amendment,[2] which "forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). An Eighth Amendment claim for denial of adequate medical treatment has two parts: (1) an objective component, which requires a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendant was deliberately indifferent to that need. *Farmer v. Brennan*, 511 U.S. 825, 834,

---

[2] Plaintiff also indicates that these events violated his rights under the Fourteenth Amendment. But as Plaintiff was a convicted prisoner at the time of these events, his claims for denial of medical care fall under the Eighth Amendment. *See* Felony Offender Information Search, Tennessee Department of Correction, https://apps.tn.gov/foil-app/search.jsp (last visited May 14, 2021); *Linden v. Washtenaw Cty.*, 167 F. App'x 410, 415 (6th Cir. 2006) (noting that pretrial detainees' "right to adequate medical treatment attaches through the Fourteenth Amendment, rather than the Eighth Amendment"). Moreover, to the extent that Plaintiff intended to assert that the denials of vision and medical care to him violated his substantive due process rights under the Fourteenth Amendment, those claims are not cognizable, as the Eighth Amendment provides an explicit source of constitutional protection for these claims. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (providing that because the Eighth Amendment supplied the explicit textual source of constitutional protection for claims governing the prisoner's health and safety, his substantive due process claim was subject to dismissal).

6

842 (1994). The subjective prong requires a plaintiff to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference requires a mental state amounting to criminal recklessness, and negligence is insufficient. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citation omitted).

### 1. Vision Care

As set forth above, Plaintiff first asserts that he has not received a vision evaluation despite receiving referrals to an eye doctor in late 2019 and in March 2020, for which he asserts Defendant Centurion Health Care System is liable [Doc. 1 p. 7–9]. For this Defendant to be liable for this omission under § 1983, its custom or policy must have caused a violation of Plaintiff's constitutional rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (noting that a plaintiff seeking hold a company performing a traditional state function liable under § 1983 "must show that a policy or well-settled custom of the company was the 'moving force'" behind the constitutional violation).

Plaintiff does not expressly plead that any custom or policy of Defendant Centurion caused him not to receive a vision examination in the past year pursuant to his two referrals. But even if the Court liberally construes the complaint to allege that the policy Defendant HSA Walker posted on April 28, 2020, under which BCCX medical providers would triage sick call requests during the national healthcare emergency, is attributable to Defendant

7

Centurion, and that an unknown medical provider determined that Plaintiff's eye doctor referral was minor or not urgent and therefore did not send Plaintiff to the eye doctor due to this policy of Defendant Centurion, Plaintiff's complaint indicates only that at the time of these referrals, he needed new eyeglasses and/or a new prescription for eyeglasses. However, Plaintiff sets forth no facts from which the Court can plausibly infer how or to what extent his need for glasses and/or a new prescription was affecting him at the time of these referrals, and his allegation that he needed new eyeglasses and/or a new prescription, standing alone, does not rise to the level of a serious medical need. *Harris v. Likens*, No. 1:20-CV-00049, 2021 WL 1213287, at *3 (M.D. Tenn. Mar. 31, 2021) (finding that a prisoner's allegations regarding his "need for vision correction and treatment of associated symptoms" failed to allege a serious medical need and citing cases with similar holdings); *Sanders v. Prison Health Servs., Inc.*, No. 2:10-CV-12846, 2013 WL 878747, at *5 (E.D. Mich. Jan. 29, 2013) (providing that "poor vision and need for eyeglasses do not by themselves constitute a serious medical need"). And while Plaintiff alleges that, in the year or so after his most recent referral for an eye examination, his eyes have deteriorated to the point that reading for more than a few minutes causes him headaches, nothing in the complaint indicates that any Defendant, or any BCCX prison official or medical provider, is aware of this condition but has ignored it pursuant to any policy of Defendant Centurion.

As such, Plaintiff's allegations regarding the delay in him receiving a vision evaluation despite referrals fail to state a claim upon which relief may be granted under § 1983 as to any Defendant.

8

Case 1:21-cv-00088-TAV-CHS   Document 10   Filed 05/14/21   Page 8 of 12   PageID #: 13

### 2. Dental Services

Plaintiff next alleges that Defendants Centurion, Doe, and Meydrech[3] have denied him dental care for his lower partial denture [Doc. 1 p. 9–11]. Specifically, Plaintiff alleges that he saw Defendant Meydrech for prior denture issues, but when he alerted this Defendant that he had two chips in his denture in March 2020, Defendant Doe responded by telling Plaintiff that they had limited ability to see patients and he would need to put in a sick call request when they began seeing patients again [*Id.* at 9–10]. But now Plaintiff's denture has further deteriorated and is missing two separate areas, which causes him pain, frustration, and fear of choking [*Id.* at 10–11].

However, even if the Court assumes that Defendant Doe triaged Plaintiff's March 2020 request for dental care for his denture and determined that it was non-urgent pursuant to the policy that Defendant HSA Walker announced on April 28, 2020, and that this policy is attributable to Defendant Centurion, nothing in the complaint allows the Court to plausibly infer that any Defendant knew of and disregarded a substantial risk of harm to Plaintiff based on his March 30, 2020 medical request regarding his denture. Rather, this medical request stated only that Plaintiff's denture "ha[d] two chipped places that are causing issues" [Doc. 1-1 p. 60]. Nothing in the complaint allows the Court to plausibly infer that this statement, standing alone, made any Defendant aware that Plaintiff's denture

---

[3] Plaintiff also appears to seek to hold TDOC liable for this lack of care [Doc. 1 p. 10]. However, Plaintiff did not sue TDOC, which is not a suable entity under § 1983, *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (TDOC is not a "person" within the meaning of § 1983), nor has he set forth any facts from which the Court can plausibly infer that any other individual Defendant was personally involved in this incident.

9

issues created a substantial risk of harm to Plaintiff. Further, nothing in the complaint indicates that any medical provider or prison official is aware that Plaintiff's denture has now deteriorated to the point that it is causing him pain and fear of choking.

Thus, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983 as to any Defendant with regard to the alleged denial of dental care.

### B. Quarantine

As set forth above, Plaintiff next alleges that while prisoners who attend doctor appointments outside of the prison must quarantine afterwards for fourteen days in a segregated housing unit, the TDOC employees who transport and accompany those prisoners to those appointments do not have to do so, and that this policy violates his rights under the Eighth and Fourteenth Amendments [Doc. 1 p. 11–12, 15–17].

However, as to Plaintiff's allegation that the quarantine policy violates his rights under the Eighth Amendment, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Accordingly, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Thus, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" violate a prisoner's rights under the Eighth Amendment. *Id.* at 8–9 (citations and quotations omitted). In examining such claims, the

10

Case 1:21-cv-00088-TAV-CHS   Document 10   Filed 05/14/21   Page 10 of 12   PageID #: 15

court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Rhodes*, 452 U.S. at 347. Plaintiff's allegation, however, that prisoners are required to quarantine in a segregated housing unit for fourteen days after medical visits outside of the prison does not allege an extreme deprivation of a basic human necessity or a condition causing him a grave risk, and therefore does not allege a violation of his Eighth Amendment rights.

Moreover, as to Plaintiff's allegation that the quarantine policy violates his rights under the Fourteenth Amendment, it is well-established that the Due Process Clause does not protect every change in a prisoner's conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). Specifically, in *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Supreme Court held that a prisoner is entitled to due process protections only where a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486–87. The *Sandin* Court concluded that placement in administrative segregation did not implicate a liberty interest because it did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005). Nothing in Plaintiff's complaint allows the Court to plausibly infer that the prison's requirement that prisoners quarantine for fourteen days in a segregated housing unit after

11

medical visits inevitably affects Plaintiff's sentence or imposes an atypical and significant hardship on Plaintiff.

Accordingly, the complaint fails to state a claim upon which relief may be granted under § 1983 as to any Defendant with regard to Plaintiff's quarantine claim.

## IV. CONCLUSION

For the reasons set forth above:

1. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

2. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

3. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE